The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. We'll hear argument first in number 20-1041, We-LAN Inc. v. Sharp Electronics Corporation. Mr. Olegchko. May it please the court. The district court's judgment should be reversed for at least three reasons. We raise additional reasons that are brief, but I'm going to focus on three here. First, I would like to talk about the admissibility issues regarding the source code and the source code declarations. Second, I'd like to talk about the district court's decision to strike a portion of We-LAN's expert report on induced infringement. And third, I'd like to talk about the direct infringement issues. The district court erred in finding... With respect to the 654 patent, if we were to affirm the district court's rulings concerning the source code, we wouldn't have to reach any other issues, is that correct? With respect to the 654 patent, that is correct partially. Part of the argument is that the district court should have allowed We-LAN's expert to rely upon the source code and declarations under Rule 703. So although they might have not been admissible for substantive purposes, they at least should have been presented to the jury for procedural purposes. And the court still has, of course, the issues with respect to the 250 patent claim construction issues. In the Third Circuit, evidence should be considered on summary judgment unless it is incapable of being inadmissible at trial. The district court made no finding that the source code and declarations were incapable of being admissible at trial, but it refused to consider them anyways. The district court failed to apply the correct... You haven't shown that either the source code or the declarations constituted business records. There's no affidavit of the custodian attesting to the criteria for business records being satisfied. Isn't that correct? Well, we have declarations from several witnesses regarding the source code from each third party that states that the source code is a business record and kept in the ordinary course of business by those chip makers. The district court found that the declarations didn't check all the boxes of Rule 803, paragraph 6. However, that's looking at the evidence as presented on summary judgment. The district court should have looked at it as whether the source code was capable of being admissible at trial. And certainly, the declarants could have provided supplemental declarations that check those boxes, that cross all the T's and dot all the I's. These individuals had firsthand knowledge of the design of the chips and the source code. They could have said when they created the source code, how that source code was maintained, why it was created in supplemental declarations. They could have also explained the alleged inconsistencies in the source code, in the dates in the source code that the district court noted in its opinion. It also could have explained that the circumstances surrounding the production of the source code had no bearing whatsoever on what the declarants said in their declarations. But the district court didn't consider whether or not the declarants could have provided corrected testimony. It simply said, assuming Byland could obtain corrected declarations, that it wouldn't allow the evidence anyways. But that's just not the standard. The standard is whether the evidence is capable of being admissible at trial, not whether it's inadmissible as presented to the district court on summary judgment. Shouldn't we be asking whether the district court abused its discretion in saying that the material you supplied to argue for ultimate trial admissibility was insufficient and you were not entitled to a second chance, particularly in light of at least two things. One is a colloquy that the district court could properly interpret as meaning, though not necessarily, but could have interpreted and did interpret it as meaning that the chip makers' individuals were not going to come to court. And I think also statements from maybe two of them saying that the supply of those declarations was the last thing that these companies were going to do. In the realm of discretion, isn't that a reasonable view of the record? I don't believe it is a reasonable view of the record because Byland never – there's nobody that said that there's no evidence in the record that these individuals would not come to trial. Byland's counsel said to the district court that it couldn't compel the individuals to come to trial, but nobody had asked. But really, the issue of whether or not anybody would come to trial to testify is beside the point because Byland could have obtained corrected declarations and could have deposed these individuals, which would have satisfied the criteria of 8036 without needing to bring anybody to trial. Why did the district court have to allow them to submit corrected declarations or to be deposed? I mean, he seems to say it was too late. Why is that an abuse of discretion? Well, I believe that the district court applied the wrong legal standard in evaluating admissibility. It did not consider whether the evidence was capable of being admissible with corrected declarations. If the district court failed to apply the correct legal standard, that is an abuse of discretion. But regardless... I'm sorry, I didn't mean to interrupt. No, go ahead. Regardless of whether the district court was correct regarding the admissibility of the declarations for substantive purposes, Rule 703 allowed Byland's expert to rely on the declarations. Rule 703 allows an expert to rely on inadmissible evidence. If the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury. Can I just ask you about this? What's wrong with the following way of looking at it? Rule 702, not 703, but 702 specifies the essential positive requirements for an expert to testify. And it's applied not just to the whole ball of wax, but to particular assertions. In the absence of a basis for saying that the code corresponds to the chips, there is no basis for admitting testimony about how the code operates. And then the question is, what is the basis for saying that the code corresponds to the chips? And I don't see why under 702, Dr. Murrell is qualified to testify about that. He didn't do any testing of the chips that I recall. And he doesn't know anything particularly about the record-keeping practices of the particular chip manufacturing companies. At which point, all 703 does is say, by the way, there are not additional requirements of certain sorts, but why would this not flunk 702? Because he relied upon the statements of the declarants in their declarations that there was a correspondence between the source code and the chips. He also personally reviewed the source code on their source code computer. Right, so he could testify about how something that operated in accordance with the source code would work. But there's an underlying fact that, without which, none of that testimony has any bearing on the case. And that underlying fact is the code chip correspondence. And he has no basis for testifying about that. Well, he certainly did testify about that in his report, and he relied upon the declarations. And there's no dispute that an expert in the field would rely on those declarants' testimony. In fact, defenders argue... Why would a computer software expert rely as an expert matter in interpreting the software on a business person's assertion, just assertion, that the code corresponds to the hardware? Well, these aren't business people. The declarants are engineers. They are persons with first-hand knowledge of the design of the chips. They know the correspondence. They're not just business persons. In fact, defendants got declarations from these very same individuals. And defendants argued to the district court, and they cannot stand before you now and argue the opposite, that Wyland does not and cannot argue that experts in the field would not consider fact declarations from engineers with first-hand knowledge of the SOC's issue. That's at Appendix 8988. Well, that sounds as though you're saying that in any case, if you have an expert testifying, that expert can rely on affidavits or other inadmissible evidence to form an opinion, and all you need to win your case is the opinion. I mean, take a tort case, for example, an automobile accident case, in which the expert is testifying that the existence of skid marks shows that the driver was trying to brake. That's a perfectly good thing for an expert to do, but I don't think in those circumstances you could have the expert testify that there were, in fact, skid marks. He's there to testify as to the interpretation of the meaning of the skid marks. Isn't that correct?  It might not be admissible for substantive purposes. The jury might not. The jury is the fact finder, right? But the expert can certainly testify to that. That doesn't go to his expert opinion about whether or not a skid mark exists. But the plaintiff would have to establish the existence of the skid marks through admissible evidence other than the expert testimony, right? If the expert was relying on a photograph, and that photograph of the skid mark is something that an expert in the field would reasonably rely, I don't believe so. The jury would be permitted to evaluate that expert's testimony, look at the photograph, and determine whether the expert had credibility or not. And that's what 703 allows, when there is no prejudicial effect. And here, there's no prejudicial effect. What if he says that in circumstances such as that, that you don't need to introduce the evidence of the skid marks or the underlying evidence on which the expert is relying? Can you repeat that question? I missed the beginning of it. What case holds that you can have expert testimony based on something like the skid mark without introducing evidence of the skid mark itself? Or here, evidence that you can have the expert testify as to the meaning of the source code without introducing the source code itself? We're relying on Rule 703, Your Honor. I don't have a particular case on that specific issue other than that Rule 703 can be used that an expert can rely on, otherwise inadmissible evidence, if the appropriate value of it to help the jury evaluate the opinion substantially outweighs its prejudicial effect. Can I ask you one question on the inducement topic, just so that I understand the record well enough? Is it right that the final infringement contentions, I think was it October of 2017, speak entirely to the question of whether the chips at issue fall within claim limitations, that those contentions say nothing about either direct infringement or indirect infringement? By which I mean, of course, who did what? Which of the 271A activities or B activities or C activities are at issue? That the entirety of that document is about comparing the limitations to the one would not expect, one would not, I think, fault the absence of reference to indirect infringement because the entire subject of who did what and even direct infringement was not even part of them at all. I think that's right, Your Honor. The district court scheduling order didn't require the contentions to talk about infringement issues per se. It required Wyland to map the claims to the accused products, and that's what Wyland did. It didn't say these contentions are only applicable to our direct infringement case and applicable to our inducement case. That just wasn't a requirement. We didn't do that in those contentions. We didn't somehow limit them. We did what the court ordered us to do, which is map those claims to the products. Did you take discovery of the defendants on the various, on the kind of knowledge and encouragement elements of inducement? Yes, we did in the depositions, and we also, as noted in the briefs, observed interrogatories on defendants regarding their affirmative defenses, and defendants answered those interrogatories, including with respect to inducement. And that was just a few months before defendants came in front of the district court and said they were somehow surprised by Wyland's inducement case. It just defies logic to me that they could somehow be surprised by that, especially when it was clear that Wyland pled inducement from its original complaint. Defendants moved to dismiss the inducement allegations under Rule 12B6, and then Wyland amended those allegations and bolstered them. Defendants answered them, and then defendants served responses to Wyland's interrogatories. I see that my time is up. Before you sit down, I have one more question. What did the district court orders say about spelling out infringement contentions? What exactly did the order say? The scheduling order says that ordered Wyland to produce, this is in quotes, produce an initial claim chart relating each known accused product to the defendant. That's at appendix 383. Okay. Unless my colleagues have further questions, I'm hearing none. Thank you. We'll give you two minutes for rebuttal. Thank you. Mr. O'Quinn. Thank you, Judge Dyke, and may it please the court. John O'Quinn on behalf of the defendants. With respect to the 654 patent, Wyland needed both the RTL source code printouts and the SOC manufacturer's declarations to attempt to prove infringement. And if this court affirms as to the inadmissibility of either, then Wyland has no evidence of direct infringement by anybody, and it need go no further. That's because only the printouts purported to show how the SOC performs deinterlacing and only the- I'm sorry, just so I understand. Acronyms are really tough for me. The SOC is the System on Chips. Can we just call them the chips? Yes, Judge Toronto, the chips. Only the printouts are what they relied on to show purportedly how the chips perform deinterlacing. And, of course, Wyland didn't invent deinterlacing, so they need to show that their specific method is being used on the chips. And only the declarations purported to not just authenticate the printouts, but also to provide substantive testimony to map them to the accused televisions. And the district court did not abuse its discretion in finding that neither were admissible. It found, first, that the declarations were too conclusory to authenticate the source code printouts, that the printouts and the declarations were not sufficiently trustworthy to satisfy the hearsay exceptions. And it found that Wyland further failed to meet its burden of showing that any of the evidence, either the printouts or the declarations, would be presented at trial in a manner that would make it admissible. Now, at argument, my colleague relies heavily on 703. Of course, his 703 position depends on the declaration, and it depends on the substantive testimony of these declarants, which would be hearsay that maps the source code from 2017 to the variety of chips that are accused in the accused products. And, of course, the experts, as was addressed in some of the questioning that you raised, Judge Toronto and Judge Dyke, the expert doesn't have knowledge and can't testify to the underlying fact. They still have to provide some basis for proving that underlying fact. And I think particularly where it's here, you have the district court finding that the declaration itself is untrustworthy given the circumstances in which it was obtained. Indeed, the language, including the language about there being no material differences, was dictated almost word-for-word by Wyland as terms of a settlement and release of claims against the chip manufacturers. And you can see that in Appendix 13,636 and 13,648. The district court was well in its discretion in finding that these testimonial assertions were not admissible in their current form and that they were not, that they had not carried their burden, and the burden was on them, as Rule 56 makes clear, to show that the material would be available in a form  Mr. Erwin, did the subject, when Chief Judge Stark indicated, either before he indicated doubt about the sufficiency of the materials already submitted to establish eventual admissibility at trial, was there a discussion in which Wyland said, requested additional opportunity to submit more, you know, further affidavits or the like? My understanding, Judge Toronto, is that it did not. The colloquy with the judge is that in Appendix 15,398 to 15,400, Wyland's counsel admitted it had no way to bring them to trial. And then the district court invited a supplemental briefing, and Wyland, in fact, filed two supplemental briefs. One's at 15,450, and the other's at 15,646. And in neither supplemental brief does Wyland make the argument that it's going to be able to bring these individuals to trial. Instead, it doubles down on a variety of hearsay exceptions. The district court walks through in his decision each of those hearsay exceptions and finds that they are not applicable. But they don't argue they'd be able to bring them to trial. Can I just close that topic and return to this somewhat puzzling 703 basis? Sure. Can you, based on the discussion we've already had this morning, you indicated that you said something like, of course there must be independent evidence for the underlying fact about what the code or the diagrams show what's actually on the chips. Can you elaborate on that of course? Why is the other side wrong to read 703 as an affirmative admissibility prescription based on any facts brought to the attention of the expert that would include these particular facts? Sure. So two points, Judge Franco. First, I think the Fifth Circuit addressed this well in the factory mutual insurance case versus Alcon, which is cited in our brief. And it's that trial courts must, quote, serve a gatekeeping function with respect to Rule 703 to ensure that the expert isn't being used as a vehicle for circumventing the rules of evidence. And that is exactly what you would have going on here. Right. But can you work more? I mean, all of that is like saying that's a high-level policy point. Can you work with the words of 702, 703, the advisory committee notes, any case law that tells us, that at least tells me how to think about this more clearly? Well, I guess within the language of 703 itself, Judge Toronto, I point you to the language that otherwise inadmissible information can be disclosed, quote, only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. And I think that in this case, when you have the district court finding that the declaration itself is unreliable. But the district court didn't address that standard, and I'm not clear that that's the right standard. Well, just like I understand the district court didn't address it. What's the problem if that's the right standard, because the district court didn't address it? Well, my point simply, Judge Dyke, was that when the district court has found that the declaration itself is not trustworthy, it is not reliable, number one, I think that's a reason that the expert can't properly rely on it. Number two is the reason that it can't be disclosed to the jury, because in that circumstance it would be certainly highly, highly prejudicial given that it is. Put that point aside. The question is what is it in 702 and 703 that says that the source codes can't come in through the expert testimony? Well, I think, you know, again, it's the, you know, an expert can rely on, you know, there are circumstances in which an expert can rely on something that would not be admissible. Of course the expert can rely on it, but the question is does it have to be separately admitted for the expert to rely on it? Right. And where you're dealing with, I think what you have here is a, you know, a foundational fact with respect to their case, that the idea that an expert can then rely on a declaration that the district court has found to be not only inadmissible, but to be untrustworthy, not even admissible under the residual exception. The hallmark, of course, to the residual exception being trustworthiness. To say that the expert can then rely on them, I think, you know, both runs afoul of 702 and 703. Because under 702, a foundational fact like this is not something that the expert has any basis to know themselves. Did you have any case law confirming that? I guess what you just said seems to me to be, I guess, it makes me think of Judge Dyke's hypothetical about the expert and the expert is just looking at a photograph. You still need somebody to say, I took this photograph. Those are the skid marks at this place on this day and the expert, I guess in your terms, you would say, cannot simply say, well, I'm an expert and I rely on what people tell me about that sort of thing all the time in order to get the foundational fact in. What's the case law on that? Yeah. I mean, I think the best case for this proposition, and I don't know that it helps more than what I already identified, Judge Toronto, is the Fifth Circuit case that we cited in our brief, the factory mutual insurance case. Because I think this gets to what the policy issue is. Did that involve a kind of foundational fact? Do you happen to remember the facts of that case or not? Unfortunately, Judge Toronto, I don't remember the details off the top of my head on that case, beyond the propositions that it stands for. But I will say that it just seems anomalous to me. And indeed, I'm not aware of any case that has, and perhaps that really sort of proves the point. The absence of the case law and my colleague's inability to cite anything that would support the proposition that he's advocating goes to how remarkable it would be to say that if you have a foundational fact, such as the one that's being asserted here, that there were no material differences. Again, an opinion that Judge Stark took issue with and said, how could they possibly have even said that? Because he hadn't even engaged in claim construction at the time that he rendered his decision. But in all of it, I'm just not aware of any case that allows the sort of backdoor approach that the plaintiff is advocating here, and to do so in the context of this case with the specific findings that Judge Stark, who looked at this very, very closely, finding an inherent lack of reliability in this declaration. And indeed, they had given away the ability to even call these people to trial. I mean, that's the appendix 12,907, agreed not to subpoena them. So under these circumstances, having found them to be unreliable, not credible, and not subject to any of the hearsay exceptions, and indeed referring under 901B4 to the, quote, including the production and the lack of indice of trustworthiness in the source code and in the declaration, that is appendix 30, it would be remarkable. Mr. O'Kleene, can I switch topics to the inducement issue? Sure. Which I gather it's, anyway, what document, whether order or interrogatory request or any kind of other document, imposed a obligation on Wyland to say something about inducement during this whole discovery process, having put inducement in the complaint, in the amended complaint, et cetera. I'm more than a little puzzled about what it is they failed to do that they were obliged to do. Sure. No, I appreciate the question, Judge Toronto. And I think as you were perhaps suggesting and how the question was being teed up, I think it is important to recognize that, obviously, if the court agrees as to the inadmissibility of the source code or the declarations, then this is an issue that you don't have to get to. Right, but I appreciate that. But I understand and appreciate the question. And I think here Wyland is conflating the requirement that they serve claim charts with the requirement that they serve infringement contentions. If you look at Appendix 383, they had to provide a final infringement contentions, and we had to provide final invalidity contentions. And that's separate from the claim charts. And I think that the district court, and obviously the district court's rules to request this. Can I ask you, I think I asked your friend on the other side this question. In the final infringement contentions, was it I think October 2017, am I right that the entirety of it is the mapping of products to claim limitations and there's not anything about any kind of infringement, namely not anything about direct infringement, not anything about indirect infringement, et cetera? I think my time has expired. May I answer the question? Thank you. And the follow-up. Go ahead. Sure. So I believe that at Appendix 3746 there's a reference to the testing theory of direct infringement. I may be mistaken about that, but I believe that there is. But regardless, as I said, the requirement here was not just that they provide claim charts, but that they provide final infringement contentions. And the district court whose procedures these were, you know, found it frankly somewhat surprising that they had not addressed. I don't actually think that's what Chief Judge Stark said he was surprised by. I think what he said he was surprised by, fairly enough,  deals with only half of the question of infringement, namely how do accused products read on or not read on from the plaintiff's point of view? How do the claims read on them? But don't ask anything about the whole other half of infringement, namely who did what when. Is there a sale? Is there an importation? Is there a use? Is there a making? Is there a inducing activity? And the question just isn't asked. In part, I think, because of the shorthand that everybody uses about how products infringe when that's not what the statute says. Well, I do think that the shorthand here is that these are final infringement contentions. And of course, you know, Black's law defines a contention as an assertion or claim about something. And Judge Stark at Appendix 7854 said, it seems like there's no clear authority that requires per se that the final infringement contention is disclosed theories of indirect infringement. But he recounts the history in this case of the back and forth that the party's had, the some half dozen letters that he's received from Weiland alone on their infringement contentions. And he makes the observation that in all of the various and sundry colloquies that they had had, that they, you know, never, quote, never even alluded to indirect infringement in the quote, many discussions we had when plaintiffs said, we've told you everything. That's at Appendix 7855. And he noted that we've had lots of discussions on the plaintiff's infringement contentions. He's had to assess the quality of their disclosures and that they were repeatedly assured that they had told us everything about how they were going to impose liability. And indeed, if you look at Appendix 3335, they say, they, they represent quote, these are final contentions. We're not going to come back at the end and change our infringement theory. And at Appendix 4393, they said it was complete disclosure of the theories of infringements that all of its cards were on the table. At Appendix 4393. And I think that- In your mid-November letter, I think to the court saying why the submission, the supposedly final submission was inadequate. Did you point out there that one of the inadequacies was that nothing was said about what kinds of infringement were being alleged? Because I don't think there was anything said about direct infringement either. Judge Toronto, we didn't because the theories that they presented, all our theories that would go to their direct infringement theory, there was nothing after the filing of the complaint, nothing that suggested that this was, remained at issue in the case any more than doctrine of equivalence remained in the case. And if you look at their, their complaint, it's very broad and generic. It refers to literal and or infringement of the doctrine of equivalence, direct and or indirect infringement. And- Are the infringement contentions that they served on you in the record? The contentions they served on us are in the record at appendix 7785. We objected to the scope of those- Wait a second, 7785? Yes. I believe that's in volume two, Judge Dyke. Specifically, they said state and describe all facts supporting your contention that the defendant did not infringe each of the asserted claims. And we responded very, you know, very broadly and very generically that we didn't infringe directly or indirectly, either literally or under the doctrine of equivalence. That's at appendix 76. Does infringement contentions take the form of responses to interrogatories? Is that how it works? Yes. A party can serve a so-called contention interrogatory? No, no, I understand that. But under the court's order, there was supposed to be a submission of final infringement contention. Does the interrogatory answer serve as the final infringement contention? Or is there a separate document? Oh, I think their final infringement contentions would be a separate document. They're not in the form- My question is, is that in the record? Is this what's at 3564 to 3874 for SHARP and 20,000, et cetera, for VIZIO? I believe that is what they refer to as their final infringement contentions, Judge Taranto. What page is that at? What page are their contentions at? I was looking at 3564 to 3874, 300 pages. What they served in their final infringement contentions are their claim charts with whatever else they added to them. And the question I thought you were asking, and I misunderstood Judge Dyke, was what was the contention that they had served on us and that we had responded to? And I was simply noting that we had objected to their infringement contentions as continuing to be deficient, to fail to place us on notice of all of their theories, but that we responded to their contention very broadly. And they say, well, you could have served a contention on us, to which my response is, that's what the court's rule required. The court required you to serve final infringement contentions. And if their final infringement contentions don't say anything about indirect infringement, then I think under the circumstances of this particular case and all of the back and forth, and I think this is part of the point that Judge Stark was making at Appendix 78, 56, that he weighs all of that in concluding that they should have known that given their affirmative representation, it's not just omissions, but commissions here, that they should have put all of their cards on the table. And again, you don't get to this issue unless you get past the issue of the admissibility of both the source code and the declaration. Okay, but just to be clear about this, so the final infringement contentions that they served on you did nothing more than provide a claim chart. Is that right? I think that you could, yes. I think that you can describe their final infringement contentions as essentially being in the form of a claim chart. Okay. Do my colleagues have any other questions? No, thank you. Okay. All right. Thank you, Mr. Okin. Mr. Oleszko. Thank you, Judge Stark. Thank you. You have two minutes, Mr. Oleszko. Thank you, Your Honor. I want to return briefly to the admissibility issues to emphasize that there was no dispute about the mapping of the code to the products. In the defendant's own declarations that they obtained from the third-party chip makers, those declarations say that the source code obtained by Wyland maps to the accused products that Wyland's declarations asserted that they did. That's at Appendix 12-508 and 509 and 12-578 and 79. Okay. So the mapping and the correspondence between the code and the chips was undisputed. You said 12-508-009. What was the second site, please? 12-578-79. I don't have those in front of me. Is that part of what the other side says was a set of submissions made on the assumption that the various declarations were admissible? Yeah, that's correct. They say that they were submitted in the alternative, Your Honor, but actually they submitted those declarations in support of an early summary judgment motion and then relied on them in their expert reports. I believe my time is up. If you have any more questions for me, please let me know. Okay. Hearing none, thank you, Mr. Oluchko. Thank you, Mr. O'Quinn. The case is submitted.